UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RUTH STARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15 CV 1463 ACL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Ruth Stark brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge (ALJ) found that Stark was not disabled, because she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

### I. Procedural History

Stark protectively filed her applications for DIB and SSI on June 5, 2012, claiming that she became unable to work due to her disabling condition on January 10, 2011. (Tr. 281-94.) Stark's claims were denied initially. (Tr. 106-17.) Following an administrative hearing, Stark's

claims were denied in a written opinion by an ALJ, dated July 17, 2014.  (Tr. 12-20.)  Stark

then filed a request for review of the ALJ's decision with the Appeals Council of the Social

Security Administration (SSA), which was denied on August 4, 2015.  (Tr. 7, 1-5.)  Thus, the

decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981,

416.1481.

In the instant action, Stark first argues that the ALJ "did not provide a proper decision at

step two because the ALJ failed to properly consider Stark's cognitive disorder as a medically

determinable impairment."  (Doc. 12 at 5.)  Stark next argues that the ALJ "did not provide a

proper decision at step two because the ALJ failed to consider Stark's obesity, hypertension, and

hyperlipidemia as severe impairments."  (Doc. 12 at 11.)  Stark finally contends that the ALJ

"erred by failing to provide a proper credibility analysis as required by SSR 96-7p in that the ALJ

failed to base the analysis on the substantial evidence of record."  (Doc. 12 at 13.)

## II.  The ALJ's Determination

The ALJ found that Stark met the insured status requirements of the Social Security Act

through December 31, 2015, and has not engaged in substantial gainful activity since January 10,

2011, the alleged onset date.  (Tr. 14.)

In addition, the ALJ concluded that Stark has the following medically determinable

impairments: hypertension, hyperlipidemia, and obesity.  (Tr. 15.)  The ALJ found that Stark

does not have an impairment or combination of impairments that has significantly limited her

ability to perform basic work-related activities for twelve consecutive months.  *Id.*  The ALJ

therefore found that Stark does not have a severe impairment or combination of impairments.  *Id.*

The ALJ found that Stark's allegations regarding her limitations were not entirely credible.

(Tr. 16.)

As to the opinion evidence, the ALJ indicated that he was assigning "significant weight" to the opinions of the medical experts, Dr. John Pollard, Dr. Mitchell Collman, and Dr. Charles Augenshine; and to the opinion of examining psychologist Dr. Paul Rexroat. (Tr. 18.) He stated that he was extending "considerable weight" to the opinion of non-examining state agency psychologist Dr. Kyle DeVore. (Tr. 19.) The ALJ indicated that he was according "less weight" to the opinion of consultative psychologist Dr. Michael Armour. *Id.* Finally, the ALJ stated that the medical source statement of treating physician Dr. Doris Tribune-Brown was entitled to no weight. *Id.*

The ALJ found that Stark has not been under a disability, as defined in the Social Security Act, from January 10, 2011, through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on June 5, 2012, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on June 5, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a

preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The plaintiff's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the plaintiff's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's

physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of

the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of

production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.  Discussion

Stark first argues that the ALJ made errors in evaluating the severity of her impairments.

Stark next argues that the ALJ erred in assessing the credibility of her complaints.   The undersigned will discuss these claims in turn.

## IV.A.   Severity

"An impairment. . .is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."   20 C.F.R. § 416.921(a).   Basic work activities "mean the abilities and aptitudes necessary to do most jobs," including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.   20 C.F.R. § 416.921(b).   The burden of showing a severe impairment at step two of the sequential evaluation rests with the claimant, and the burden is not great.   *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001); *see also Gilbert v. Apfel*, 175 F.3d 602, 604–05 (8th Cir. 1999) (court to apply "cautious standard" at step 2 of evaluation process).   "While '[s]everity is not an onerous requirement for the claimant to meet...it is also not a toothless standard.'"   *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (quoting *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007)).

Stark contends that the ALJ erred in evaluating both her mental and her physical impairments.   The undersigned will discuss these claims separately.

## IV.A.1.   Mental Impairments

Stark argues that the ALJ failed to properly consider her cognitive disorder as a medically determinable impairment.   Stark contends that, in doing so, the ALJ did not consider whether her cognitive impairment was severe or employ the "special technique" described in the regulations for evaluating mental impairments.

Defendant argues that, although the ALJ did not include Stark's alleged cognitive

impairment in his list of medically determinable impairments, such a technical omission does not warrant remand as there was no error in the ALJ's substantive analysis and it did not affect the outcome.

A "medically determinable impairment" is an impairment that results from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508 and 416.908. A physical or mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant]'s statement of symptoms." *Id.*

The ALJ found that Stark's hypertension, hyperlipidemia, and obesity were medically determinable impairments. (Tr. 15.) Despite not including Stark's cognitive disorder as a medically determinable impairment, the ALJ proceeded to discuss the severity of Stark's alleged cognitive disorder in his step two analysis. (Tr. 18-19.)

The ALJ pointed out that Charles Auvenshine, Ph.D., testified as an impartial medical expert at Stark's initial and supplemental hearings. At the first hearing held on November 27, 2013, Dr. Auvenshine expressed the opinion based upon his review of the record that Stark does not have a mental impairment. (Tr. 18, 84.) Dr. Auvenshine stated that Stark has no limitations in activities of daily living; mild limitations in social functioning; mild limitations in concentration, persistence or pace; and no episodes of decompensation of extended duration. *Id.*

Stark then testified at the hearing that she had had difficulties with her memory and with comprehending written information as a result of a stroke she suffered in 2006. (Tr. 93-94.) Stark stated that she had not undergone any "mental analysis" related to these issues. (Tr. 100.) At the end of the hearing, the ALJ stated that he planned to order a psychological consultative examination for Stark, and directed Stark to tell the psychologist "about your stroke. Make sure

you tell about your problems, okay." (Tr. 104.)

On December 19, 2013, Stark saw Michael Armour, Ph.D., for a psychological evaluation. (Tr. 495-500.) Stark reported that she suffered a stroke in 2006, after which she "couldn't think like [she] had previously." (Tr. 496.) She also reported difficulties with her memory. (Tr. 497.) Stark stated that she had gotten along "okay" with her supervisors and coworkers but suffered an "emotional breakdown" when she was in her 20s, and that she had seen a mental health professional for three to four months during this period. (Tr. 497.) She denied receiving inpatient psychiatric treatment. *Id.* Upon mental status examination, Stark was oriented in all spheres, her speech was normal, and her responses were relevant and coherent. *Id.* Stark appeared to lose her train of thought at times but overall her responses flowed in a logical, sequential, and goal-directed manner and were negative for signs of loose associations, tangential thinking, or circumstantial thinking. *Id.* Her mood was "somber," and her affect was somewhat limited in range in that she did not show much emotional expression or variation, but the emotion she did show was appropriate. *Id.* Dr. Armour estimated Stark's intellect as within the average to high average range. (Tr. 498.) Stark's long-term memory was "grossly intact based upon her ability to give a detailed social history which appeared to be internally consistent." *Id.* Her immediate memory and recent memory were also intact. *Id.* Stark's insight and judgment were found to be adequate. *Id.* Dr. Armour diagnosed Stark with cognitive disorder not otherwise specified, mild, secondary to reported stroke. *Id.* He assessed a GAF score of 45 to 50.[1] *Id.*

---

[1] A GAF score from 41 to 50 represents serious symptoms (such as thoughts of suicide, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (such as the inability to make friends or keep a job). American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32–34 (4th ed. 2000) ("*DSM–IV* ").

Dr. Armour concluded that Stark suffers mild impairment in her daily activities; mild to occasionally moderate impairment in her ability to maintain social functioning; moderate impairment in her concentration, persistence, or pace; and no repeated episodes of deterioration in a work-like setting.   (Tr. 499-500.)

At the second administrative hearing held on July 8, 2014, Dr. Mitchell Collman, a physician board certified in internal medicine and cardiology, testified that there was no documentation in the record of Stark's stroke or of any deficit that has occurred or remained as a result of her alleged stroke.   (Tr. 30.)

Dr. Auvenshine testified that he had reviewed the consultative examination of Dr. Armour, and that it did not change his testimony from the previous hearing.   (Tr. 32.)   When questioned by Stark's attorney, Dr. Auvenshine stated that he sees "no discrepancy" between Dr. Armour's report and his prior testimony.   (Tr. 33.)   Dr. Auvenshine further testified that the GAF index "is no longer used, it's no longer deemed valid, and I have ceased to use it myself a long time ago." *Id.*   He stated that "it fluctuates all over the landscape according to who's doing the rating," and that "it's a subjective numerical value based on, on what the rater knows about the claimant."   *Id.*

In his written decision, the ALJ evaluated Stark's alleged mental impairments of depression[2] and cognitive disorder.   As to Stark's depression, the ALJ stated that the objective evidence of record does not establish that Stark has a severe mental impairment.   (Tr. 17.)   The ALJ found that Stark has no more than mild, if any, restriction of activities of daily living or difficulties in maintaining social functioning, or with concentration, persistence, or pace.   *Id.*   He stated that Stark's basic abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have never been significantly impaired on any

---

[2]   Stark does not challenge the ALJ's evaluation of her depression.

documented long-term basis.   *Id.*   The ALJ further noted that Stark has never required psychiatric hospitalization, has never sought formal mental health treatment, and is not taking psychotropic medications for depression.   *Id.*

The ALJ noted that Stark underwent a consultative psychological evaluation by Paul Rexroat, Ph.D on August 7, 2012, at which time she denied symptoms of depression and anxiety. (Tr. 17, 458.)   Stark also denied recent or current mental health treatment and denied taking psychotropic medications.   *Id.*   Upon examination, Dr. Rexroat noted that Stark exhibited a mildly restricted range of emotional responsiveness and a slightly flat affect.   *Id.*   Stark demonstrated intact memory and reasoning skills, no evidence of thought disorders, adequate insight and judgment, and an average range of intellectual functioning.   (Tr. 17, 459.)   Dr. Rexroat concluded that Stark had no mental diagnosis.   (Tr. 460.)   As to functional restrictions, Dr. Rexroat found that Stark is able to understand and remember simple instructions, can sustain concentration and persistence with simple tasks, and has mild limitations in her ability to interact socially.   (Tr. 459.)

The ALJ discussed Dr. Armour's report, and indicated that he was assigning "less weight" to Dr. Armour's finding that Stark's "cognitive disorder secondary to reported stroke imposes mild to moderate limitations in social and occupational functioning."   (Tr. 18-19.)   As support for this finding, the ALJ stated that Dr. Armour's limitations "appear to be based solely on claimant's complaints of thinking and memory deficits, and not on mental status exam, noting intact memory and concentration."   (Tr. 19.)   The ALJ also indicated that state agency psychologist Kyle DeVore, Ph.D., determined that Stark does not have a severe mental impairment.   (Tr. 19, 109.)

The ALJ next discussed the testimony of Dr. Auvenshine and stated that he found his opinion persuasive and was according it "significant weight."   (Tr. 18.)   The ALJ stated that Dr.

Auvenshine's testimony was supported by the medical evidence, and that Dr. Auvenshine is a specialist who is familiar with Social Security regulations. *Id.*

Stark contends that the ALJ erred in discrediting the opinion of Dr. Armour and in relying on the opinion of Dr. Auvenshine. Where the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ must assign controlling weight to a treating physician's opinion if it is well-supported and consistent with other evidence in the record. 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). In evaluating a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion. *Id.*

The ALJ provided sufficient reasons for discrediting the opinion of consultative examiner Dr. Armour. The ALJ explained that Dr. Armour's limitations appear to be based on Stark's complaints of thinking and memory deficits, and not on her mental status examination. (Tr. 19.) This finding is supported by Dr. Armour's report. As an explanation for his opinion that Stark has mild to moderate impairment in social functioning, Dr. Armour indicated that Stark "stated that some of her coworkers considered her 'bossy'", and "reported that she had stayed more to herself." (Tr. 499.) Dr. Armour acknowledged that Stark "interacted with the examiner in a polite and appropriate manner." *Id.* Similarly, in explaining his finding that Stark has moderate impairment in concentration, persistence, or pace, Dr. Armour stated that Stark "reported suffering a 'stroke' several years ago and that her thinking and memory have been impaired since that time." *Id.* Dr. Armour noted that Stark "was able to attend to the examiner's questions for the most part although she also at times appeared to lose her train of thought. She could recall 3/3 unrelated

words both right away and after a six minute delay." *Id.*

The ALJ's finding that Dr. Armour's opinion regarding Stark's limitations were not supported by his examination and appeared to be based on Stark's subjective reports is supported by substantial evidence. Dr. Armour specifically cited Stark's subjective allegations when explaining his findings. Although Dr. Armour noted that Stark at times appeared to lose her train of thought, he stated that she was still able to attend to his questions, and that her memory testing was normal. (Tr. 499.) Dr. Armour's findings on examination do not support a moderate impairment in concentration, persistence, or pace, and suggest that his opinion was based on Stark's subjective reports as the ALJ found.

Stark also argues that the ALJ erred in assigning great weight to the opinion of Dr. Auvenshine. As the ALJ noted, Dr. Auvenshine was a specialist familiar with social security regulations. (Tr. 18.) Dr. Auvenshine expressed the opinion that Stark had no mental impairment after reviewing Dr. Armour's report. The ALJ found that Dr. Auvenshine's opinion was consistent with the medical evidence of record. The Regulations and case law provide that an ALJ can consider opinions from medical experts on the nature and severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); *Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) ("The regulations specifically provide that the opinions of non-treating physicians may be considered.").

Stark contends that Dr. Auvenshine's opinion was internally inconsistent because he found that Stark did not have a medically determinable mental impairment, yet also found that she had mild limitations in social functioning, and in concentration, persistence, and pace. (Tr. 84.) Dr. Auvenshine's findings are not inconsistent. To constitute a medically determinable impairment, a mental disorder must be established by medical evidence consisting of signs, symptoms, and

laboratory findings.   20 C.F.R. §§ 404.1508 and 416.908.   Psychiatric signs are defined as

"medically demonstrable phenomena that indicate specific psychological abnormalities, e.g.,

abnormalities of behavior, mood, thought, memory, orientation, development, or perception."   20

C.F.R. § 404.1528(b).   Dr. Auvenshine could have credited Stark's allegations of mild difficulties

with memory and concentrating and in social functioning while still finding that a mental

impairment had not been established by medical evidence.   Such a finding is consistent with the

opinion of Dr. Rexroat, who found that Stark had no mental diagnosis and exhibited adequate

social skills during her examination, but still found that she had mild limitations in her social

functioning based on her subjective reports.   (Tr. 459-60.)   Thus, the ALJ did not err in assigning

weight to Dr. Auvenshine's opinion.

Despite finding Stark's cognitive disorder and depression were not medically determinable

impairments, the ALJ considered whether her alleged mental impairments were severe.   The ALJ

concluded as follows:

> there is no evidence of a medically determinable and diagnosed mental impairment
> other than a mild cognitive disorder related to reported stroke.   However, the
> record does not establish that claimant has a limitation in cognitive functioning as
> mental status exams note her to have intact memory and concentration, and the
> claimant is able to concentrate well enough to drive, shop, read, and surf the
> internet.   The claimant has failed to establish that she has a mental impairment that
> would impose work-related limitations, as the objective evidence of record does
> not indicate the claimant has received mental health treatment or prescribed
> psychotropic medications for depression or any other mental impairment during the
> alleged period of disability.

*Id.*   In addition, as previously discussed, the ALJ found that Stark has "no more than mild, if any,

restriction of activities of daily living or difficulties in maintaining social functioning, or with

concentration, persistence, or pace."   (Tr. 17.)   The ALJ did, therefore, apply the special

technique to rate Stark's degree of functional loss due to her alleged mental impairments.

The Court finds that the ALJ did not err in finding that Stark did not have any severe mental

impairments.   The medical record does not support that her mental impairments significantly limit her ability to do basic work activities.   Even if the ALJ should have found that Stark's cognitive disorder was a medically determinable impairment, the record does not support a finding that this impairment was severe.   *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred).   Rather, the ALJ fully considered whether Stark's alleged cognitive disorder was severe, and concluded that it was not.   Thus, the ALJ did not err in evaluating the severity of Stark's alleged cognitive impairment.

## IV.C.  Physical Impairments

Stark next argues that the ALJ failed to consider her obesity, hypertension, and hyperlipidemia as severe impairments.   Stark contends that the ALJ erred in assigning "significant weight" to the opinion of medical expert Dr. Pollard, yet not adopting Dr. Pollard's finding that Stark was limited to light work.[3]

In evaluating Stark's physical impairments, the ALJ discussed the testimony of the medical experts.   He first noted that John Pollard, M.D., testified at Stark's initial administrative hearing that Stark has hypertension and hyperlipidemia that are controlled with medication and cause no end organ damage.   (Tr. 18, 80-81.)   The ALJ pointed out that Dr. Pollard testified that Stark does not meet the requirements of a listed impairment and that Stark was capable of performing light exertional activity with no additional postural, manipulative, or environmental limitations. *Id.*

The ALJ next discussed the testimony of medical expert Mitchell Collman, M.D., at

---

[3]   Stark does not challenge the ALJ's decision to afford no weight to the medical source statement of treating physician Dr. Tribune-Brown due to the fact that it was unsupported by the evidence as a whole including her own records.   (Tr. 19.)   The undersigned will not, therefore, discuss Dr. Tribune-Brown's opinion.

Stark's second administrative hearing.   He stated that Dr. Collman testified that Stark does not have a severe physical impairment, and that Stark has no limitations based upon her conditions of hypertension, hyperlipidemia, and obesity.   (Tr. 18, 29-30.)

As Stark points out, the ALJ indicated that he was assigning "significant weight" to the opinions of the medical experts, including Drs. Pollard and Collman.   (Tr. 18.)   The ALJ then concluded that there was no objective evidence of a severe physical impairment or combination of impairments.   (Tr. 19.)   The ALJ explained that Stark's medically diagnosed hypertension and hyperlipidemia appear well-controlled with medication management and without evidence of end organ damage or work-related limitations.   *Id.*   For example, the ALJ noted that Stark's treating physician Dr. Tribune-Brown, indicated on September 6, 2013, that Stark reported no complaints and her hypertension and hyerlipidemia were well-controlled.   (Tr. 488-89.)   With regard to Stark's obesity, the ALJ stated that this medically determinable impairment does not impose substantial limitations with mobility and stamina or significantly exacerbate Stark's other medical conditions.   *Id.*   He noted that there is no evidence of severe, chronic pain or significant range of motion limitation of a weight-bearing joint or lumbosacral spine.   *Id.*   Rather, Dr. Tribune-Brown simply advised Stark to lose weight and exercise.   (Tr. 492.)

Stark, relying on *Reynolds v. Astrue*, 2007 WL 5100461, at *4 (E.D. Mo. Aug. 7, 2007), contends that the ALJ's failure to provide an explanation for not including Dr. Pollard's limitation is reversible error.   In *Reynolds*, the ALJ indicated that the opinion of a consultative psychologist that the claimant had moderate limitations in areas such as concentration, persistence, and pace, was "well rationalized", but did not explain why he did not adopt her findings.   *Id.*   The Court noted that there was "no medical evidence on the record finding that plaintiff was only mildly limited with regard to concentration, persistence, and pace."   *Id.*   The Court also found that the

ALJ erred in evaluating other opinion evidence. *Id.* The case was, therefore, reversed and remanded for reconsideration of the claimant's mental limitations. *Id.*

The undersigned finds that the ALJ properly considered Stark's obesity, hypertension, and hyperlipidemia at step two. While Stark is correct that the ALJ did not specifically explain why he was not adopting Dr. Pollard's opinion that Stark was limited to light work, this error was harmless. The ALJ acknowledged Dr. Pollard's testimony that Stark was limited to light work, along with Dr. Pollard's opinion that Stark's hypertension and hyperlipidemia were controlled with medication. (Tr. 18.) He then proceeded to discuss Dr. Collman's opinion that Stark does not have a severe physical impairment and that Stark has no limitations related to her hypertension, hyperlipidemia, and obesity. (Tr. 18, 29-30.) The ALJ also cited the medical evidence that revealed Stark's hypertension and hyperlipidemia were controlled with medication, and that she had no additional limitations resulting from her obesity. Contrary to *Reynolds*, there was other evidence supporting the ALJ's finding that Stark had no limitations resulting from her physical impairments. It is clear from the ALJ's opinion that he considered Dr. Pollard's opinion, but chose to discredit it due to the contrary medical evidence that he cited. Although it would have been preferable for the ALJ to specifically state that he was discrediting Dr. Pollard's opinion regarding the limitation to light work, this deficiency in the ALJ's opinion-writing technique does not warrant remand. *Hensley v. Colvin*, No. 15-2829, — F.3d —, 2016 WL 3878219, at *4 (8th Cir. July 18, 2016) ("[A]n arguable deficiency in opinion writing that had no practical effect on the decision...is not a sufficient reason to set aside the ALJ's decision.").

**IV.D. Credibility**

Stark next argues that the ALJ erred by failing to provide a proper credibility analysis.

As a general matter, credibility determinations "are the province of the ALJ, and as long as

'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will

defer to the ALJ's decision. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting

*Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to

credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the

claimant's testimony.'" *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th

Cir. 2006)). In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ

must consider all of the evidence, including objective medical evidence, and evidence relating to

the factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), including: (1)

Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3)

precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication;

and (5) Plaintiff's functional restrictions. *See Julin*, 826 F.3d at 1086; *see also* 20 C.F.R. §

416.929(c). The ALJ does not need to discuss each factor separately; rather, the court will review

the record as a whole to ensure relevant evidence was not disregarded by the ALJ. *See McCoy v.

Astrue*, 648 F.3d 605, 615 (8th Cir. 2011); *see also Dunahoo*, 241 F.3d 1033, 1038 (8th Cir. 2001)

("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer

to its judgment even if every factor is not discussed in depth.").

Here, the ALJ properly discounted Stark's credibility based upon her own testimony, the

objective medical evidence of record, Stark's daily activities, and her lack of treatment for her

mental impairments. With regard to her daily activities, the ALJ noted that Stark reported that she

has no difficulties taking care of her personal needs; is able to perform household chores, including

cooking, cleaning, laundry, shopping, and paying bills; is able to drive; watches television; reads;

surfs the internet; and visits with grandchildren. (Tr. 16, 88, 94-97, 344-47.) Although Eighth

Circuit cases sometimes send "mixed signals" concerning the relevance of a claimant's daily

activities in credibility determinations, the daily activities admitted by Stark are in excess of other cases where the daily activities have undercut a plaintiff's credibility. *See Clevenger v. Social Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (acknowledging that the Eighth Circuit has sent "mixed signals" concerning the importance of daily activities, but agreeing that the daily activities in that case—doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives—supported an ALJ's decision to discredit a plaintiff's assertions of disabling pain); *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (permitting an ALJ to discount a fibromyalgia plaintiff's credibility in part based upon the claimant's daily activities, including the ability to cook, clean, drive, shop, and take care of personal grooming and hygiene).

The ALJ next discussed the lack of findings in the objective medical record. The ALJ noted that the treatment notes of treating physician Dr. Tribune-Brown reveal that Stark's hypertension and hyperlipidemia are well-controlled with medication compliance. (Tr. 16.) The ALJ also pointed out that, despite Stark's allegations of history of a cerebral vascular accident, there was no medical evidence in the record of Stark having a cerebral vascular accident or residuals resulting from a stroke. *Id.* With regard to Stark's obesity, the ALJ noted that Dr. Tribune-Brown simply advised Stark to lose weight through diet and exercise. *Id.* The ALJ properly considered that the lack of objective evidence supporting her complaints detracted from her credibility. *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir. 1994) (absence of objective medical evidence supporting allegations of pain is one factor the ALJ is required to consider).

With regard to Stark's mental impairments, the ALJ noted that Stark has not sought or been referred for formal mental health treatment and is not taking psychotropic medications for depression. (Tr. 17.) This is a proper factor to consider when assessing a claimant's credibility.

*See Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir. 1995) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem."); *see also* Social Security Ruling (SSR) 96–7p, at *7 ("... statements may be less than credible if the level or frequency of treatment is inconsistent with the level of complaints....").

Stark contends that the ALJ failed to consider her positive work history. Defendant argues that the ALJ did consider Stark's work history when he noted that Stark continued to work at various jobs through a temporary employment agency after her alleged onset of disability date, until April 2012. (Tr. 14.) Stark responds that the ALJ discussed her work history only in determining whether her work was substantial gainful activity and did not link this evidence to his credibility finding. Stark further argues that the fact that she attempted to work after her alleged onset of disability date does not detract from her credibility.

Stark is correct that her positive work history supports her credibility, and that the ALJ did not acknowledge Stark's positive work history in determining her credibility. As Defendant points out, Stark also worked after her alleged onset of disability. Stark's work activity after her alleged onset date, however, detracts from her credibility. *See* 20 C.F.R. § 404.1574(a) (if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity); *Goff*, 421 F.3d at 792 ("Working generally demonstrates an ability to perform a substantial gainful activity."); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."). *See also Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's...part-time work [was] inconsistent with her claim of disabling pain.").

In sum, the ALJ gave numerous reasons for discounting Stark's credibility, and that

determination is entitled to deference in this Court.   The ALJ was not required to discuss every *Polaski* factor.   Although the ALJ did not credit Stark for her positive work history prior to her alleged onset date, Stark worked after her alleged onset of disability date, which detracts from her credibility.   The ALJ did not, therefore, err in finding Stark's subjective allegations less than credible.

## V.   Conclusion

The ALJ's determination that Stark did not have a severe impairment or combination of impairments and was not therefore disabled is supported by substantial evidence on the record as a whole.   Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2016.